# United States Court of Appeals for the Federal Circuit

———————

**JACK HENRY & ASSOCIATES, INC., COMMUNITY BANK OF TEXAS NA, AMERICAN NATIONAL BANK OF TEXAS NA, GREEN BANCORP, INC., GREEN BANK NA, MOODY NATIONAL BANK NA, FIRST SONORA BANCSHARES INC, FIRST NATIONAL BANK OF SONORA, EXTRACO BANKS NA, CITIZENS STATE BANK, TEXAS GULF BANK NA, JEFFERSON BANK,**
*Plaintiffs-Appellants*

**v.**

**PLANO ENCRYPTION TECHNOLOGIES LLC,**
*Defendant-Appellee*

———————

2016-2700

———————

Appeal from the United States District Court for the Northern District of Texas in No. 3:15-cv-03745-N, Judge David C. Godbey.

———————

Decided: December 7, 2018

———————

JAY E. HEIDRICK, Polsinelli PC, Kansas City, MO, argued for plaintiffs-appellants. Also represented by RUSSELL S. JONES, JR.; MICHAEL DAVID PEGUES, Dallas, TX.

JEREMY SETH PITCOCK, The Pitcock Law Group, New York, NY, argued for defendant-appellee.

———————————

Before NEWMAN, WALLACH, and STOLL, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* NEWMAN, in which WALLACH and STOLL, *Circuit Judges*, joins.

Additional views filed by *Circuit Judge* STOLL, in which *Circuit Judge* WALLACH joins.

NEWMAN, *Circuit Judge.*

Jack Henry & Associates, Inc. ("Jack Henry") and eleven Texas banks ("the Banks"), collectively "Appellants," appeal the ruling of the United States District Court for the Northern District of Texas, dismissing this declaratory judgment action against Plano Encryption Technologies LLC ("PET"). The district court held, citing Federal Circuit rulings, that PET's contacts with the Northern District did not subject it to personal jurisdiction, and therefore that venue was improper.[1]

Applying the venue statute and guided by precedent, we conclude that PET is subject to personal jurisdiction in the Northern District. We reverse the dismissal and remand for further proceedings.

## I

### *Venue in the Northern District*

PET is a Limited Liability Company established in the State of Texas, and is registered to do business

———————————

[1]   *Jack Henry & Assocs. Inc. v. Plano Encryption Techs., LLC*, No. 3:15-CV-3745-N, 2016 WL 9282411 (N.D. Tex. Aug. 26, 2016) ("Dist. Ct. Op.").

throughout Texas, with its registered address in Plano, Texas. Plano is in the Eastern District of Texas. The Banks all have their principal offices or branches or customers in the Northern District of Texas.

PET declares that its "sole business is to enforce its intellectual property." J.A. 543 (Declaration of Bradley Liddle, Chief Executive Officer). Mr. Liddle wrote to each of the Banks, identifying PET's patents, stating that the Banks are believed to be infringing the patents, and inviting non-exclusive licenses. The letters to all the Banks are similar, *see, e.g.*, the following letter addressed to Robert Hulsey (President and CEO) and Steve Booker (EVP) of American National Bank of Texas, at its address in Terrell, Texas. Terrell is in the Northern District:

> PET has reviewed the technology of American National Bank of Texas ("ANBTX") and believes that ANBTX is infringing several claims of its patents, including without limitation U.S. Patent Nos. 5,974,550; 5,991,399; and 6,587,858. Our review of your mobile apps indicates that your company infringes at least claims 1, 9, 29 and 37 of U.S. Patent No. 5,991,399 (the '399 patent), as illustrated by the claims charts attached as Exhibit A. . . . that ANBTX infringes at least claims 14–17 of U.S. Patent No. 5,974,550 (the '550 patent), as illustrated by the claims charts attached as Exhibit B. . . . at least claim 6 of U.S. Patent No. 6,587,858 (the '858 patent) is infringed in connection with at least your online banking features, as set forth in the claims charts attached as Exhibit C.

J.A. 137 (footnote omitted). Exhibit A is entitled "Draft Settlement Claims Chart—U.S. Patent No. 5,991,399 vs. ANBTX," and consists of 22 pages of "infringement" analysis for claims 1, 9, 29, and 37 of Patent No. 5,991,399, claim clause by claim clause. J.A. 139–60.

Exhibit B is 16 pages of infringement analysis of claims 14–17 of Patent No. 5,974,550, JA 161–76; and Exhibit C is 4 pages of infringement analysis of claim 11 of Patent No. 6,587,858. JA 177–80. The letter further states:

> PET actively licenses and enforces its patent rights and has recently filed a lawsuit against Citizens National Bank for infringement of the technology covered by these patents. *Plano Encryption Technologies, LLC v. Citizens National Bank,* Civ. No. 2:15-cv-1168 (E.D. Tex.). We write to invite you to take a license to our patent portfolio.

J.A. 137.

Similar letters and attachments were sent to each of the Banks, *i.e.*, to Bob Malone (President and CEO) and Patrick Holt (EVP and COO) of Sonora Bank at its address in Sonora, in the Northern District of Texas, J.A. 326; to Cory Newsom (President and CEO) and Dwight Overton (EVP) of City Bank at its address in Lubbock, in the Northern District of Texas, J.A. 573; to F. Scott Dueser (President and CEO) and Gary Webb (EVP) of First Financial Bank at its address in Abilene, in the Northern District of Texas, J.A. 575; to Eddie Schulz (President and CEO) and Kyle McNeese (SVP) of Lubbock National Bank at its address in Lubbock, in the Northern District of Texas, J.A. 577; and to J. Pat Hickman (CEO) and David Jones (General Counsel) of Happy State Bank, at its address in Amarillo, in the Northern District of Texas, J.A. 621. These banks have their principal offices in the Northern District, and the other banks have branches or customers in the Northern District. It is not disputed that all the Banks conduct banking business in the Northern District of Texas. All the letters from PET state that "review indicates" PET patents are infringed and refer to PET's pending lawsuit against Citizens National Bank in the Eastern District.

Jack Henry provides software systems for the Banks' mobile apps, and states that it is indemnifying the Banks for any liability for infringement. Jack Henry's counsel wrote to PET, giving reasons why the PET patents are not infringed, questioning patent validity, and requesting PET and its counsel to meet and discuss the issues. J.A. 132–35.

PET did not respond to Jack Henry. PET's counsel at Chaudhari Law, PLLC wrote to each of the Banks, stating that "only your bank is accused of infringement." These letters disputed Jack Henry's views of non-infringement and invalidity, and further stated:

> We have a successful history of enforcing the intellectual property rights of our clients against infringers. In addition to obtaining numerous licenses, we have also won jury verdicts against infringers, including one last September in Marshall, TX, which was one of the top ten verdicts for intellectual property cases that year.

J.A. 370 (Letter from Chaudhari Law to Bob Malone, President, and Patrick Hold, EVP &COO, First Sonora Bancshares, in Sonora, in the Northern District of Texas).

Jack Henry and the Banks then filed this declaratory action in the Northern District of Texas. PET moved for dismissal, stating that venue is improper in the Northern District.

Venue in a multidistrict state is a subject of 28 U.S.C. § 1391:

> (d). Residency of corporations in States with multiple districts.—

> For purposes of venue under this chapter, in a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an ac-

> tion is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State, and, if there is no such district, the corporation shall be deemed to reside in the district within which it has the most significant contacts.

The district court granted PET's motion for dismissal, stating that PET's actions do not subject it to personal jurisdiction in the Northern District of Texas. The district court stated that the Federal Circuit has established "unique" rules for patent cases, and explained:

> While such letters might be expected to support an assertion of specific jurisdiction over the patentee because the letters are purposefully directed at the forum and the declaratory judgment action arises out of the letters, [the Federal Circuit has] held that, based on policy considerations unique to the patent context, letters threatening suit for patent infringement sent to the alleged infringer by themselves do not suffice to create personal jurisdiction.

Dist. Ct. Op. at *3. The district court cited the Federal Circuit's decision in *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1333 (Fed. Cir. 2008). However, our decision in *Avocent* did not establish the generalization that letter charging infringement can never provide specific jurisdiction, and did not depart from due process precedent on this aspect of venue.

Determination of venue is dominated by due process considerations. In *Avocent* the patentee was a resident of Taiwan and the declaratory action was filed in Alabama; the parties were already engaged in patent litigation in district court in the state of Washington. The *Avocent* court stated: "[d]etermining whether personal jurisdiction

exists over an out-of-state defendant involves two inquiries: whether a forum state's long-arm statute permits service of process, and whether the assertion of personal jurisdiction would violate due process." *Avocent*, 552 F.3d at 1329 (quoting *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1359 (Fed. Cir. 2001) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–76 (1985)). In holding that the Alabama venue violated due process as to the defendant, the court did not establish a general rule applicable to all circumstances and all forms of contact and all locales.

With respect to the forum's long-arm statute, the Fifth Circuit has stated that "[b]ecause Texas's long-arm statute extends to the limits of federal constitutional due process, only [the due process] inquiry is required." *Companion Prop. & Cas. Ins. Co. v. Palermo*, 723 F.3d 557, 559 (5th Cir. 2013). Acts of soliciting business in Texas have been deemed subject to the Texas Long-Arm Statute. *See, e.g.*, *Siskind v. Villa Found. for Educ., Inc.*, 642 S.W.2d 434 (Tex. 1982).

Applying due process to determination of specific jurisdiction and venue, precedent describes three relevant factors:

> The three factors are: (1) whether the defendant "purposefully directed" its activities at residents of the forum; (2) whether the claim "arises out of or relates to" the defendant's activities within the forum; and (3) whether assertion of personal jurisdiction is "reasonable and fair."

*Inamed Corp.*, 249 F.3d at 1360 (citing *Akro Corp. v. Luker*, 45 F.3d 1541, 1545 (Fed.Cir.1995)). As the Court stated in *Burger King*:

> Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, th[e] fair warning requirement is satisfied if the defendant has purposefully

> directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities. . . . Nevertheless, minimum requirements inherent in the concept of fair play and substantial justice may defeat the reasonableness of jurisdiction even if the defendant has purposefully engaged in forum activity.

471 U.S. at 472–78 (internal quotations and citations omitted). The first two factors comprise the "minimum contacts" portion of the jurisdictional framework, and in *New World International, Inc. v. Ford Global Technologies, LLC* we held that the sending of a letter that forms the basis for the claim may be sufficient to establish minimum contacts. 859 F.3d 1032, 1037–38 (Fed. Cir. 2017).

On this appeal PET agreed, following *New World,* that the minimum contacts factors are met. *See* Oral Argument at 18:08–35, http://oralarguments.cafc. uscourts.gov/default.aspx?fl=2016-2700.mp3:

> COURT: What distinguishes the proper analysis of those first two requirements from *New World* . . . ? Tell me about what distinguishes it from the *New World* analysis.

> PET COUNSEL: I would concede that . . . the Court has always found that the first two elements would be met by the mere sending of a letter into a forum.

It is not disputed that PET "purposefully directed" its charges of infringement to at least eleven banks conducting banking business in the Northern District of Texas. These charges "arise out of or relate to" PET's patent licensing activities in the Northern District, pursued in letters from PET and its counsel. *Burger King*, 471 U.S. at 472–73.

The due process factor concerns whether the exercise of personal jurisdiction is reasonable and fair. "First, a court is to determine whether the connection between the forum and the episode-in-suit could justify the exercise of specific jurisdiction. Then, in a second step, the court is to consider several additional factors to assess the reasonableness of entertaining the case." *Xilinx, Inc. v. Papst Licensing GmbH & Co. KG*, 848 F.3d 1346, 1354–55 (Fed. Cir. 2017) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 139 n.20 (2014)). PET has not asserted that jurisdiction in the Northern District is inconvenient or unreasonable or unfair. It may be noted that PET is subject to general jurisdiction in the state of Texas and is registered to do business throughout the state.

The Federal Circuit has recognized the divergent circumstances that affect due process. We stated in *Akro Corp.*:

> [W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable. Most such considerations usually may be accommodated through means short of finding jurisdiction unconstitutional. For example, . . . a defendant claiming substantial inconvenience may seek a change of venue.

45 F.3d at 1546 (quoting *Burger King*, 471 U.S. at 476–77). We again applied due process considerations in *Breckenridge Pharmaceutical, Inc. v. Metabolite Laboratories, Inc.*, holding that personal jurisdiction was met by the sending of license letters to possible infringers in the forum, where an exclusive licensee residing outside the forum conducted business in the forum, and the patentee "ha[d] not presented a compelling case that the exercise of

personal jurisdiction would be unreasonable or unfair." 444 F.3d 1356, 1369 (Fed. Cir. 2006).

Precedent illustrates the dominance of concerns for due process and fairness. In *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, the court cited a "policy favoring settlement" and "the interstate judicial system's interest in obtaining the most efficient resolution of controversies." 148 F.3d 1355, 1361 (Fed. Cir. 1998) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980))*,* and held that the letter contacts in that case did not support jurisdiction in the recipient's forum. *Id.*

The diversity of facts in consideration of due process comports with the Court's guidance that personal jurisdiction "is not susceptible of mechanical application." *Kulko v. Superior Court of Cal.*, 436 U.S. 84, 92 (1978). The standard is "fair play and substantial justice." *E.g.*, *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). For example, in *Inamed* this court found personal jurisdiction based only on letters and phone calls initiated from out-of-state:

> Based on the clear principles set out in Supreme Court jurisprudence, we conclude that Dr. Kuzmak's negotiation efforts, although accomplished through telephone and mail from New Jersey, can still be considered as activities "purposefully directed" at residents of California.

*Inamed*, 249 F.3d at 1362. The court held that personal jurisdiction in California was "reasonable and fair" on the facts of that case.

Here, PET has undertaken a licensing program, with threats of litigation, directed to the Banks conducting banking activity in the Northern District. The Appellants stress the breadth and detail of PET's accusations of infringement, and the obligation of the forum to resolve disputes involving its residents and businesses. The

Appellants point out that PET's contacts with banks in the Northern District are in conduct of PET's only business, that of licensing and litigating its patents.

The burden befalls PET, as the source of the minimum contacts, to make a "compelling case" that the exercise of jurisdiction in the Northern District would be unreasonable and unfair. In *World-Wide Volkswagen*, the Court identified factors including "the burden on the defendant, . . . the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, . . . [and] the interstate judicial system's interest in obtaining the most efficient resolution of controversies; . . ." 444 U.S. at 292 (internal citations omitted). The Court also looks to "the shared interest of the several States in furthering fundamental substantive social policies." *Id.*

PET cites *Red Wing Shoe* and *Avocent* for the proposition that patent enforcement letters can never provide the basis for jurisdiction in a declaratory judgment action. *Red Wing Shoe* and *Avocent* did not create such a rule, and doing so would contradict the Court's directive to "consider a variety of interests" in assessing whether jurisdiction would be fair. *Bristol-Myers Squibb Co. v. Superior Court of Cal.*, 137 S.Ct. 1773, 1780 (2017). In *Bristol-Myers*, the Court made clear that for personal jurisdiction "the 'primary concern' is 'the burden on the defendant.'" *Id.* (quoting *World-Wide Volkswagen*, 444 U.S. at 292). This concern is even more potent when it relates to a challenge to venue, for venue "is primarily a matter of choosing a convenient forum." *Leroy v. Great Western United Corp.*, 443 U.S. 173, 180 (1979). PET does not argue that litigating in the Northern District would be unduly burdensome, or that any of the other factors supports a finding that jurisdiction would be unfair.

Here, the Northern District has a substantial interest, for PET has charged infringement and threatened litiga-

tion against numerous banks residing and conducting business in the Northern District. *See Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.*, 297 F.3d 1343, 1356 (Fed. Cir. 2002) ("Just as a state has a substantial interest in preventing patent infringement within its borders, it also has a substantial interest in protecting its residents from claims of patent infringement that may be unwarranted . . . .").

In the circumstances herein, PET has met the minimum contacts requirement without offense to due process. We conclude that PET is subject to personal jurisdiction in the Northern District of Texas, and that venue is proper in the Northern District.

## II

### *Jack Henry's Standing*

PET repeats its challenge to the standing of Jack Henry. PET states that it did not accuse Jack Henry of infringement, and that there is no adversity between them.

Jack Henry states that it has agreed to indemnify the Banks for any liability for patent infringement. An indemnitor has standing to participate in an action that could determine its liability. *See Microsoft Corp. v. DataTern, Inc.,* 755 F.3d 899, 904 (Fed. Cir. 2014) ("If Appellees ha[ve] an obligation to indemnify their customers, they would [] have standing to bring suit."); *Arris Grp., Inc. v. British Telecomms. PLC*, 639 F.3d 1368, 1375 (Fed. Cir. 2011) ("We have recognized that, where a patent holder accuses customers of direct infringement based on the sale or use of a supplier's equipment, the supplier has standing to commence a declaratory judgment action if (a) the supplier is obligated to indemnify its customers from infringement liability . . . ."); *ABB Inc. v. Cooper Indus., LLC*, 635 F.3d 1345, 1349 (Fed. Cir. 2011) ("ABB had an interest in determining whether it would

incur liability for induced infringement, and it had an interest in determining whether it would be liable for indemnification, which turned on whether Dow would be liable for infringement").

Jack Henry, as supplier of the accused systems and as indemnitor of the Banks, has standing to participate in this action.

## CONCLUSION

The dismissal for improper venue is reversed. We remand for further proceedings.

## REVERSED AND REMANDED

# United States Court of Appeals
# for the Federal Circuit

_____

**JACK HENRY & ASSOCIATES, INC., COMMUNITY BANK OF TEXAS NA, AMERICAN NATIONAL BANK OF TEXAS NA, GREEN BANCORP, INC., GREEN BANK NA, MOODY NATIONAL BANK NA, FIRST SONORA BANCSHARES INC., FIRST NATIONAL BANK OF SONORA, EXTRACO BANKS NA, CITIZENS STATE BANK, TEXAS GULF BANK NA, JEFFERSON BANK,**
*Plaintiffs-Appellants*

**v.**

**PLANO ENCRYPTION TECHNOLOGIES LLC,**
*Defendant-Appellee*

_____

2016-2700

_____

Appeal from the United States District Court for the Northern District of Texas in No. 3:15-cv-03745-N, Judge David C. Godbey.

_____

STOLL, *Circuit Judge,* joined by *Circuit Judge* WALLACH, additional views.

While I agree with the judgment of the court, I write separately to address the statement in *Red Wing Shoe Co. v. Hockerson-Halberstadt* that "principles of fair play and substantial justice afford a patentee sufficient latitude to inform others of its patent rights without subjecting itself

to jurisdiction in a foreign forum." 148 F.3d 1355, 1360–61 (Fed. Cir. 1998). This statement has since been interpreted to mean that "the sending of infringement letters would satisfy the minimum contacts requirement of due process except for policy considerations unique to the patent context." *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1206 (Fed. Cir. 2003); *see also Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1362 (Fed. Cir. 2006) ("[T]he Federal Circuit provides that a patent owner may, without more, send cease and desist letters to a suspected infringer, or its customers, without being subjected to personal jurisdiction in the suspected infringer's home state . . . ."). It is time for this Court to revisit *Red Wing* and its progeny.

Aside from the Supreme Court's repeated warnings against creating special rules for patent cases, these cases indicate that, where enforcement letters are concerned, a comprehensive analysis of the fairness factors outlined in *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985), and *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980), is not required. Yet, the Supreme Court has made it clear that "[o]nce it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of *other factors* to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King*, 471 U.S. at 476 (emphasis added) (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 320 (1945)). As the majority notes above, the factor that is "of primary concern" is "the burden on the defendant." *Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017) (quoting *World-Wide Volkswagen*, 444 U.S. at 292). To the extent that *Red Wing* or its progeny fail to adequately assess these factors, I suggest that they be reconsidered as directly contrary to established Supreme Court precedent.